## STONE et al. v. EACHO.
## In re TIP TOP TAILORS, Inc.
### No. 4894.

Circuit Court of Appeals, Fourth Circuit.

April 13, 1942.

Bernard Hellring, of Newark, N. J., and Reuben Golin, of New York City (Bilder, Bilder & Kaufman and Albert Freeman, all of Newark, N. J., Hahn & Golin, of New York City, and Steingold & Steingold, of

286

Richmond, Va., on the brief), for appellants.

R. Hugh Rudd, of Richmond, Va., for appellee.

Before PARKER, and DOBIE, Circuit Judges, and WARING, District Judge.

PARKER, Circuit Judge.

This is an appeal in the bankruptcy proceedings of the Tip Top Tailors, a Virginia corporation, from an order subordinating a claim of the trustee in bankruptcy of the Tip Top Tailors, a Delaware corporation, to the claims of other creditors of the Virginia corporation and refusing a motion to consolidate the bankruptcy proceedings of the Virginia corporation with those of the Delaware corporation pending in the District of New Jersey.

The Tip Top Tailors was incorporated under the laws of Delaware on January 23, 1939. Its principal place of business was in Newark, N. J., and it operated nine retail stores in various cities of the United States, one of these being located at Richmond, Va. On July 12, 1939 it secured a corporate charter from the State of Virginia for a corporation of the same name as that under which it was operating and caused three shares of stock, of the par value of $1 each, to be issued to its nominees to be held by them for its use and benefit. The officers of the two corporations were the same and no separate corporate activity of any sort on the part of the Virginia corporation is shown to have taken place. No money was paid into its treasury, no contracts were executed by it, no salaries were paid by it, unless the payment of wages to employees of the Richmond store from cash on hand be so regarded, and the only records kept for it were records kept in the office of the Delaware corporation at Newark, N. J., by an employee of that corporation. These records consisted of nothing more than transcriptions from the books of the Delaware corporation made by employees of that corporation at infrequent intervals.

Except for these book entries, and except for the fact that the Virginia charter was obtained, the Delaware corporation dealt with its Richmond, Va., store precisely in the same way as it dealt with the other stores that it was operating, as to which there was no pretense of separate incorporation. The manner of dealing with the Richmond store is thus described in the report of the special master approved by the court below, viz.:

"Sample bolts of goods and styles of suits were furnished the Richmond store by the parent corporation. A customer in Richmond, after selecting the style of suit and kind of cloth, was measured and the order was then sent from Richmond to Newark. In Newark the parent corporation then had the suit made up according to order, and shipped it back to the Richmond store, which made delivery to the customer and collected the price. At the end of each day the Richmond store would make out a complete and detailed report and send it by mail to Newark. Out of cash collected by the Richmond store salaries of the local store personnel were paid and petty items taken care of, and the balance of the money was deposited in a Richmond bank. This bank then forwarded these funds to the National City Bank of New York to the credit of the account of the Delaware corporation.

"In furnishing the Richmond store with cloth and their processing the suits for the local customers, the parent corporation made no profit. It furnished materials and labor at cost and debited the Richmond store with these amounts.

"Out of the cash collected in Richmond, the local store did not have authority to pay any bills over $10.00, with the exception of salaries. These petty cash items paid direct at Richmond in the course of a year's time would amount to not over $1,000.00. All other expenses incident to the operation and maintenance of the Richmond store were paid directly by the Delaware corporation by its own check, and then debited on its books to the Richmond Store. In this way the parent corporation paid direct all expenses incident to the operation of the Richmond store, such as rent, insurance, stationery and supplies, telephone bills, delivery charges, express charges, taxes, light, heat, and power bills, unemployment insurance, payroll, etc.

"The parent corporation operated the Richmond store on the same basis as it did the other eight stores and charged the Richmond store with its proportionate share of the main office expense. The said expense being allotted to each of the stores in the proportion that the sales of the respective stores bore to the total sales. The only corporate record pertaining to the Virginia corporation consisted of a general ledger and a general journal. Entries in

these books were only made once a year when certain items were taken off the records of the parent corporation and entered for the whole year on the ledger and journal of the Virginia corporation. All books and records of both corporations, during the entire term of the operation of the Richmond store, were kept under the supervision and control of one Henry Wegener, regular bookkeeper for the Delaware corporation, at its Newark offices acting under the instructions of the comptroller of the Delaware corporation."

To this should be added the fact that contracts with dealers in hats, shirts, etc., were made by the Delaware corporation authorizing such dealers to operate in the Richmond store, just as they operated in the other stores of the corporation, and that the Richmond store was charged and credited with respect to transactions arising out of these contracts, just as were the other stores.

With the exception of the three shares of the par value of $1 each, nothing was subscribed to the capital stock of the Virginia corporation; and, so far as the record shows, it owned no property of any sort. Fixtures, it is true, were placed in the Richmond store by the Delaware corporation and $900 was furnished it to take care of initial expenses; but these were charged to the Virginia corporation on the books of the Delaware corporation just as similar items were charged to its other stores and just as the goods furnished to the Richmond store were charged. By the time of the closing of the store, the excess of these charges over credits amounted to $39,069.67. Other debts of the Richmond store amounted to only about $12,000, included in which was a claim for rent, subject to reduction or adjustment.

On November 20, 1940, the Delaware corporation was adjudged bankrupt and appellant Stone was appointed its receiver. Two days later, two creditors attached the property in the Richmond store as property of the Virginia corporation; and on the following day an involuntary petition in bankruptcy was filed against the Virginia corporation by Stone as receiver of the Delaware corporation. The Virginia corporation was adjudged bankrupt on this petition and Stone, as receiver, thereupon filed claim for the sum of $39,069.67 as the amount owing by the Virginia corporation to the Delaware corporation. The trustee in bankruptcy of the Virginia corporation resisted the allowance of this claim and asked that, at all events, it be postponed to the claims of other creditors on the ground that the Virginia corporation was not a separate entity, but a mere instrumentality or department of the Delaware corporation, and that the amount claimed was not a true indebtedness arising out of loans and advancements but represented a mere advancement of operating capital.

The issues thus arising on the objection to the claim were referred to a special master, who filed a report finding that the Virginia corporation was a "mere shell without reality" and a "mere agency or corporate pocket" of the Delaware corporation, and recommending that the claim be postponed to the claims of other general creditors of the Virginia corporation. Appellant duly excepted to this report and filed a petition asking, as alternative relief, that the corporate entity of the Virginia corporation be entirely disregarded and that the bankruptcy proceedings relating to that corporation be consolidated with the bankruptcy proceedings of the Delaware corporation, to the end that all creditors of the last-named corporation, including those who had proved claims in the Virginia proceedings, share pari passu in the distribution of the consolidated assets. Three creditors of the Delaware corporation filed intervening petitions praying this relief. The District Judge entered order denying this motion and affirming the report of the special master; and from this order the trustee of the Delaware corporation and the three intervening creditors have appealed.

There is nothing in the record before us to show that any of the creditors who filed claims in the bankruptcy proceedings of the Virginia corporation intended to extend credit particularly to that corporation; and the fact that the bills of the Richmond store were paid by the Delaware corporation from its Newark office would indicate that it must have been generally known to the creditors of the Richmond store that it was the Delaware corporation that was there engaged in business. There is no reason apparent from the record why all creditors of that corporation should not be treated in exactly the same way; and the fact that it had obtained a charter from the State of Virginia furnishes no good reason why the creditors dealing with its Richmond store should be dealt with differently from its other creditors, since there is no showing

that business was done under that charter or that any of the creditors knew anything about it or relied on it in any way. If the Virginia corporation is treated as a separate entity and the property used in the Richmond business is applied to its debts, and the claim of the Delaware corporation is postponed in accordance with the ruling below, those creditors who have dealt with the Richmond store and have proven claims in the Virginia proceeding will have their claims practically paid in full, whereas other creditors of the Delaware corporation will receive less than 30% on their claims in the bankruptcy proceeding pending in New Jersey. If, on the other hand, the Virginia corporation is treated as a separate entity and the claim of the Delaware corporation is not postponed, this claim will so far absorb the assets at Richmond that other creditors proving in the Virginia proceeding will receive less than half the dividend received by creditors in the New Jersey proceeding. Only by entirely ignoring the separate corporate entity of the Virginia corporation and consolidating the proceedings here with those of the parent corporation in New Jersey can all the creditors receive that equality of treatment which it is the purpose of the bankruptcy act to afford; and this, we think, is the course that should be followed.

■ We agree with the court below that, if the separate existence of the Virginia corporation is recognized, the claim of the Delaware corporation should be postponed to the claims of other creditors. It is too well settled to admit of argument that the claims of a parent corporation against a subsidiary should be thus postponed where the subsidiary, as here, has in reality no separate existence, is not adequately capitalized and constitutes a mere instrumentality of the parent corporation or a mere "corporate pocket" or department of its business. See Sampsell v. Imperial Paper & Color Corporation, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Taylor v. Standard Gas & Electric Co. 306 U.S. 307, 618, 59 S.Ct. 543, 83 L.Ed. 669; Forbush Co. v. Bartley, 10 Cir., 78 F.2d 805; New York Trust Co. v. Island Oil & Transport Corporation, 2 Cir., 56 F.2d 580; Baker Motor Vehicle Co. v. Hunter, 2 Cir., 238 F. 894; In re Watertown Paper Co., 2 Cir., 169 F. 252; 19 C.J.S., Corporations, § 1568, p. 1311;

Powell, Parent and Subsidiary Corporations 112–115; Latty, Subsidiaries and Affiliated Corporations, ch. VI, pp. 153, 155; note 54 Harvard Law Review p. 1045 et seq. And even in the case of the insolvency of both corporations there may be reason for recognizing the separate entity of the subsidiary and postponing the claim of the parent, where the subsidiary has been allowed to transact business as an independent corporation and credit has been extended to it as such on the faith of its ownership of the assets in its possession. Latty, Subsidiaries and Affiliated Corporations, supra, pp. 153–155. But in a case such as this, where both corporations are insolvent, where the business has been transacted by and the credit extended to the parent corporation, and where the subsidiary has no real existence whatever, there is no reason why the courts should not face the realities of the situation and ignore the subsidiary for all purposes, allowing the creditors of both corporations to share equally in the pooled assets. As said in Latty, supra: "Perhaps the fairest way of dealing with the situation when both the parent and the subsidiary corporations are insolvent is to let all the creditors of each share pro rata in the pooled assets of both. Such procedure would be especially equitable where the claimants are creditors of both the parent and the subsidiary."

■ It is well settled that courts will not be blinded by corporate forms nor permit them to be used to defeat public convenience, justify wrong or perpetrate fraud, but will look through the forms and behind the corporate entities involved to deal with the situation as justice may require. United States v. Reading Co., 253 U.S. 26, 63, 40 S.Ct. 425, 64 L.Ed. 760; Chicago, M. & St. P. R. Co. v. Minneapolis Civic Ass'n, 247 U.S. 490, 501, 38 S.Ct. 553, 62 L.Ed. 1229; McCaskill Co. v. United States, 216 U.S. 504, 515, 30 S.Ct. 386, 54 L.Ed. 590; Edward Finch Co. v. Robie, 8 Cir., 12 F.2d 360. Not only is this done for the purpose of holding a stockholder or parent corporation for debts created by an insolvent corporate agent or subsidiary which is a mere instrumentality of the stockholder or parent, but also for the purpose of allowing the creditors of the stockholder or parent to reach assets held by such a subsidiary. Hamilton Ridge Lumber Sales Corp. v. Wilson, 4 Cir., 25 F.2d 592; Trustees System Co. of Penn-

sylvania v. Payne, 3 Cir., 65 F.2d 103, 105; Commerce Trust Co. v. Woodbury, 8 Cir., 77 F.2d 478, 487, certiorari denied 296 U.S. 614, 56 S.Ct. 134, 80 L.Ed. 435; Henry v. Dolley, 10 Cir., 99 F.2d 94, 97; Fish v. East, 10 Cir., 114 F.2d 177, 191; Darling Stores Corp. v. Young Realty Co., 8 Cir., 121 F.2d 112, certiorari denied 62 S.Ct. 111, 86 L.Ed. ——; In re Eilers Music House, 9 Cir., 270 F. 915, 924; W. A. Liller Bldg. Co. v. Reynolds, 4 Cir., 247 F. 90. And, where the court decides that the corporate entity of the subsidiary should be completely ignored and its assets and liabilities treated as those of the parent corporation, it is both logical and convenient that this be done in one proceeding. In re Foley, D.C., 1 F.2d 568; Id. D.C., 4 F.2d 152; Id. 9 Cir., 4 F.2d 154, certiorari denied Withers v. White, 269 U.S. 554, 46 S.Ct. 18, 70 L.Ed. 408; Salt Lake Valley Canning Co. v. Collins, 9 Cir., 176 F. 91; In re Alaska American Fish Co., D.C., 162 F. 498; In re Southwestern Bridge & Iron Co., D.C., 133 F. 568; Remington on Bankruptcy, 4th Ed., vol. 1, sec. 341.

In the case of In re Eilers Music House, supra, the assets of the subsidiary, which like the subsidiary here had no real separate existence, were ordered turned over to the trustee in bankruptcy of the parent in a summary proceeding upon a notice to show cause; and such a turnover order was approved in Fish v. East, supra, and in W. A. Liller Bldg. Co. v. Reynolds, supra. It is manifest, of course, that such turnover orders amount to a consolidation of any possible proceedings which might have relation to the affairs of the subsidiary with the bankruptcy proceedings of the parent. The case of Trustees System Co. of Pennsylvania v. Payne, supra, although involving the appointment of equity receivers, furnishes illustration of how equity, disregarding corporate forms and the separate corporate entity of subsidiaries, may reach assets properly applicable to the debts of the parent corporation and subject them to that purpose. The Court, speaking through Judge Woolley in that case [65 F.2d 107], said: "It is recognized in principle that the fiction of corporate entity may be disregarded where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation. Chicago, Milwaukee & St. Paul Ry. Co. v. Minneapolis Civic & Commerce Association, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; In re Rieger [Kapner & Altmark], D.C., 157 F. 609; Brown v. Pennsylvania Canal Co. [3 Cir.], 235 F. 669; Brown v. Pennsylvania R. Co. [3 Cir.], 250 F. 513; Industrial Research Corporation v. General Motors Corporation, D.C., 29 F.2d 623, 625; Central Republic Bank & Trust Company v. Caldwell [8 Cir.], 58 F.2d 721. Through long practice courts have not hesitated to disregard the doctrine of corporate entities when the facts justify it. Although we know of no instance in which it has been done in matters of receivership, we cannot see why the same power does not exist in a court or why the law does not impose upon a court the same duty in a receivership matter when, as here, the facts are substantial enough to justify, indeed to compel, a finding that the five corporations were so identified with the parent corporation as to be a part of it. Being of opinion that the law makes no exception of receiverships, we tear asunder the legal maze of corporate fiction in which they have enveloped themselves and, observing that the six corporations were not merely related by stock ownership but, like wheels in a machine, were so closely meshed that all functioned together, we find from the bills that in legal effect they were one, a finding in consonance with the casual statement of the attorney for the parent corporation at the hearing that 'the whole thing from Alabama to Pennsylvania is really one company.'"

In the case at bar, the court of bankruptcy, which is clothed with all the powers of a court of equity, had taken possession of assets alleged to belong to the subsidiary before the facts were disclosed which showed that, in justice to all creditors, the corporate entity should be ignored and the bankruptcy proceedings consolidated with the proceedings relating to the parent corporation. Under such circumstances, the proper procedure, we think, was for the trustee in bankruptcy of the parent corporation to make the motion for consolidation of the proceedings and ask that the proceedings had with relation to the subsidiary be treated as ancillary to the bankruptcy proceedings of the parent. And we do not think that the trustee of the parent was precluded from making such motion by reason of the fact that he, as receiver of the parent, had filed the petition in bankruptcy upon which the subsidiary has been ad-

judicated bankrupt and had filed claim in the bankruptcy proceedings of the subsidiary. The better procedure to defeat the attachment levied upon the assets in Virginia would doubtless have been the institution of bankruptcy proceedings ancillary to those pending in New Jersey; but since the receiver was acting as an officer of court, both in filing the petition in bankruptcy and in filing the claim, no estoppel should be held to arise from either of these actions which would preclude the court from doing full justice in the premises and from avoiding the preference in favor of certain of the creditors which would result from his mistaken action. Cf. Leonard v. Gage, 4 Cir., 94 F.2d 19; Carpenter v. Southworth, 2 Cir., 165 F. 428.

 If there are equities in favor of any of the creditors which have not been sufficiently explored in the motion for consolidation and as to which they desire to be heard further, hearing can be afforded them in the consolidated proceedings.

In re Foley, 9 Cir., 4 F.2d 154, certiorari denied 269 U.S. 554, 46 S.Ct. 18, 70 L.Ed. 408. Since, however, the assets in Virginia are unquestionably the assets of the parent corporation, and since all of the creditors of that corporation, and not merely those who have dealt with the Virginia store, have rights with respect thereto, as well as with respect to other assets of the corporation, these rights should be determined in the bankruptcy proceeding of the parent corporation, and the two proceedings should be consolidated that this may be done, with a pooling of assets and with the treatment of claims filed in either proceeding as having been filed in the proceeding as consolidated. Proper provision should of course be made for the payment of the costs that have been incurred in the course of the Virginia proceeding.

For the reasons stated, the order appealed from will be reversed and the cause will be remanded for further proceedings in accordance herewith.

Reversed and remanded.