**CHEMICAL BANK NEW YORK TRUST COMPANY, Trustee for Bondholders, Objectant-Appellant,**

v.

**Theodore W. KHEEL and Raymond J. Scully, Trustees in Reorganization, and United States of America, Appellees.**

**In the Matter of SEATRADE CORPORATION, Kulukundis Maritime Industries, Inc., Tramp Shipping & Oil Transportation Co., A. H. Bull Steamship Co., A. H. Bull & Co. (Inc.), American Tramp Shipping Development Corporation, Messenian Shipping Corporation, Star Line Agency, Inc., Debtors.**

Nos. 144–151, Dockets 30684–30691.

United States Court of Appeals Second Circuit.

Argued Nov. 3, 1966.

Decided Dec. 2, 1966.

Richard B. Barnett, New York City (Edward L. Johnson, William F. Faison and Haight, Gardner, Poor & Havens, New York City, on the brief), for objectant-appellant.

I. N. P. Stokes, New York City (James V. Ryan and Webster, Sheffield, Fleischmann, Hitchcock & Chrystie, New York City, on the brief), for appellees Kheel and Scully.

Irwin B. Robins, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty. and Marjorie A. Fine, Asst. U. S. Atty., Southern Dist. of New York, on the brief), for appellee United States.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.:

Seatrade Corporation, Kulukundis Maritime Industries, Inc., Tramp Shipping and Oil Transportation Co., A. H. Bull Steamship Co., A. H. Bull & Co. (Inc.), American Tramp Shipping Development Corporation, Messenian Shipping Corporation and Star Line Agency, Inc., corporations engaged in the shipping trade, are all debtors in proceedings under Chapter X of the Bankruptcy Act, and attempts at a plan of reorganization having failed, are now in liquidation in the United States District Court for the Southern District of New York under the Act.[1] The United States, a major creditor, moved for consolidation of the proceedings. The reorganization trustees, at first opposed, have now joined in seeking consolidation. Chemical Bank New York Trust Company is trustee for the bondholders under a First Preferred

Mortgage and indenture of the debtor Seatrade Corporation, covering the vessel Easthampton. Chemical and others, principally seamen's pension fund trustees, opposed the motion for consolidation. On reference to a Referee as Special Master, he recommended consolidation. The motion for consolidation was granted by the District Court, Thomas F. Croake, *Judge*, and Chemical Bank appeals. We find no error and affirm the order.

The debtor corporations are all owned or controlled by the former shipping magnate, Manuel E. Kulukundis. The Referee found that the debtor corporations were operated as a single unit with little or no attention paid to the formalities usually observed in independent corporations, that the officers and directors of all, so far as ascertainable, were substantially the same and acted as figureheads for Kulukundis, that funds were shifted back and forth between the corporations in an extremely complex pattern and in effect pooled together, loans were made back and forth, borrowings made by some to pay obligations of others, freights due some pledged or used to pay liabilities and expenses of others, and withdrawals and payments made from and to corporate accounts by Kulukundis personally not sufficiently recorded on the books. Evidence of these facts and others, such as dispersal of key personnel since most of the transactions occurred, support the Referee's conclusion that auditing of the corporations' financial condition and especially the intercompany relationships would entail great expenditure of time and expense without assurance that a fair reflection of the conditions of the debtor corporations would in the end be possible.

Appellant's mortgage is under attack in the courts of Bombay, the Easthampton having been sold in proceedings in admiralty and the proceeds being sufficient to satisfy the secured debt if the mortgage is held good.

---

[1] The Securities and Exchange Commission has heretofore declined to intervene in or comment on any of these proceedings, presumably because of the absence of public shareholders of the debtors.

Appellant is concerned, however, with the possibility that the mortgage may be defeated, and the claim become an unsecured one, in which case it fears a lower eventual realization if it must share with the combined creditors in the common pot, rather than with other Seatrade creditors in the identifiable Seatrade assets. It concedes that administration of the debtors' estates may well be consolidated but contends that consolidation of assets and liabilities as to appellant is beyond the court's power absent a showing that it knowingly dealt with the group as a unit and relied on the group for payment.

■ We find no such limitation on the power of the reorganization court. See Soviero, Trustee v. Franklin National Bank of Long Island, 328 F.2d 446 (2 Cir. 1964); Stone v. Eacho, 127 F.2d 284 (4th Cir.), rehearing denied 128 F.2d 16, cert. denied 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942). While the record in the *Soviero* case indicates that there was evidence that the Bank had dealt with the bankrupt and its affiliates as one, the opinion does not make this a necessary foundation for the result. Moreover, we have here an additional factor not present in *Soviero* or *Stone v. Eacho*, the expense and difficulty amounting to practical impossibility of reconstructing the financial records of the debtors to determine intercorporate claims, liabilities and ownership of assets. The power to consolidate should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationship with others. Yet in the rare case such as this, where the interrelationships of the group are hopelessly obscured and the time and expense necessary even to attempt to unscramble them so substantial as to threaten the realization of any net assets for all the creditors, equity is not helpless to reach a rough approximation of justice to some rather than deny any to all.

By the order of consolidation, in effect the intercompany claims of the debtor companies are eliminated, the assets of all debtors are treated as common assets and claims of outside creditors against any of the debtors are treated as against the common fund, eliminating a large number of duplicative claims filed against several debtors by creditors uncertain as to which debtor was eventually liable.

■ This makes possible what has heretofore not been feasible, determination, allowance and classification by the trustees of claims of creditors prior to the preparation and submission of a plan of liquidation. This is required by the Act, 6A Collier on Bankruptcy (14th ed. 1965) ¶¶ 132, 212.

It has been questioned whether the consolidation of assets and liabilities should not await the court's action on a plan of liquidation and be submitted as part of such a plan. No doubt this is and should be the normal course where feasible, but there are cases, of which this is one, where such determination to consolidate prior to the plan is required by the exigencies of the situation. Compare the classification, prior to the preparation and submission of a plan, of certain obligations of the debtor in Elias v. Clarke, 143 F.2d 640 (2d Cir. 1944), cert. denied 323 U.S. 778, 65 S.Ct. 191, 89 L. Ed. 622 (1945), the inclusion of underlying utility segments separately owned in a single reorganization, In re Pittsburgh Rys. Co., 155 F.2d 477 (3d Cir.), cert. denied *sub nom.* Philadelphia Co. v. Guggenheim, 329 U.S. 731, 67 S.Ct. 89, 91 L.Ed. 632 (1946), the determination of whether shareholders are entitled to participate prior to the preparation of a plan. In re Third Avenue Transit Corp., 238 F.2d 665 (2d Cir. 1956), cert. denied, Woolfson v. Doyle, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599 (1957).

We conclude that the order of consolidation was within the power of the reorganization court and that it was justified and indeed required by the facts of this case. The order of the District Court is affirmed.

FRIENDLY, Circuit Judge (concurring):

I cannot agree that a practice of handling the business of a group of corporations so as to impede or even prevent completely accurate ascertainment of their respective assets and liabilities in their subsequent bankruptcy justifies failure to make every reasonable endeavor to reach the best possible approximation in order to do justice to a creditor who had relied on the credit of one—especially to a creditor who was ignorant of the loose manner in which corporate affairs were being conducted. Equality among creditors who have lawfully bargained for different treatment is not equity but its opposite, and the argument for equality has a specially hollow ring when made by the United States whose priority over other creditors will necessarily be enhanced by having the assets of all these corporations thrown into hotchpot.

Neither of the precedents relied on goes so far. Judge Parker's opinion in Stone v. Eacho, 127 F.2d 284 (4 Cir.), rehearing denied 128 F.2d 16, cert. denied 317 U.S. 635, 63 S.Ct. 54 (1942), upholding consolidation of the bankrupt estates of a Virginia corporation and its Delaware parent, stressed that the Virginia corporation carried on "no separate corporate activity of any sort," 127 F.2d at 286, and demonstrated in detail that no creditor could possibly have done business with it in reliance on its credit—a demonstration not at all made in this case. The court rested its conclusion that all creditors should be treated in the same way on the lack of any "showing that business was done under that [Virginia] charter or that any of the creditors knew anything about it or relied on it in any way," id. at 287–288—this in contrast with a hypothetical case "where the subsidiary has been allowed to transact business as an independent corporation and credit has been extended to it as such on the faith of its ownership of the assets in its possession." When a petition for rehearing urged that some creditors may actually have relied on the credit of the Virginia corporation, the court placed its denial, 128 F.2d 16, on the basis that if any creditors could prove such reliance—an extraordinarily unlikely possibility on the facts—they would be sufficiently protected by the statement in the original opinion that their claims should be heard in the consolidated proceedings, a reservation conspicuously lacking here. In Soviero v. Franklin Nat'l Bank, 328 F.2d 446 (2 Cir. 1964), the sole objectant was a bank which was proved to have regarded the subsidiaries and the parent as one. Indeed, although the argument and the opinion seem to have taken a wider range, examination of the record indicates the only adverse consequence of consolidation even on the bank was its bearing on the bank's having secured repayment of a note of one such subsidiary endorsed by the parent through the latter's depositing a check in the subsidiary's bank account after the parent's petition was filed, thereby triggering a set-off that would have been unavailable if the parent had retained the funds. In contrast Commerce Trust Co. v. Woodbury, 77 F.2d 478 (8 Cir.), cert. denied, 296 U.S. 614, 56 S.Ct. 134, 80 L.Ed. 435 (1935), held that a court of equity will protect the rights of a creditor who relied on the credit of a subsidiary although the subsidiary was "[merely] an agency or department of the [parent]." While such considerations would have to yield to practicalities if even an approach to a proper accounting within the corporate group was impossible or prohibitively expensive, the situation here was not that aggravated.

I nevertheless join for affirmance on the ground of insufficient proof by Chemical that it or the bondholders for whom it is trustee relied on the separate credit of the mortgagor, Seatrade Corporation. Apparently their main reliance was on what they considered a valid mortgage of the ship and on Kulukundis' guarantee. While the mortgage indenture itself is some evidence that the bondholders were relying on the named mortgagor if, for one reason or another, the mortgaged property did not adequately

secure the debt, the Government's proof of long continued intermingling of the affairs of the various Kulukundis companies required the Chemical to come forward with at least something more.