432 F.2d 1060
 In the Matter of FLORA MIR CANDY CORPORATION et al.,
Debtors. FLORA MIR CANDY CORPORATION et al.,
Debtors-Appellants,
v.
R. S. DICKSON & Co. et al., creditors of Meadors, Inc., Appellees.
 No. 59, Docket 34713.
 United States Court of Appeals, Second Circuit.
 Argued Sept. 28, 1970.
Deciced Oct. 28, 1970.
 
 Michael J. Crames, New York City (Levin & Weintraub and Harris Levin, New York City, of counsel), for debtors-appellants.
 David L. Freeman, Greenville, S.C. (Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C., of counsel), for appellees.
 Before DANAHER,* FRIENDLY and HAYS, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 Meadors, Inc., was organized late in 1961 to manufacture and sell candy in Greenville, S.C. In addition to stock, it issued $330,000 of 7% Convertible subordinated debentures. In 1963 the stockholders sold all their shares to United Biscuit Company of America, later Keebler Company. The debenture holders gave up their conversion privilege as part of the transaction. Meadors' sales force was dismantled, and its output was sold under the Keebler label.
 
 
 2
 In February 1968 Keebler entered into an agreement to sell the stock of Meadors to Atlantic Services, Inc. According to a complaint filed by the Meadors debenture holders in the District Court for South Carolina in November 1968, Atlantic helped itself to $235,000 of Meadors' funds to pay Keebler. Allegedly Keebler was a party to this fraud and worked to conceal it from Meadors' creditors by contracting to buy candy and thus keep Meadors afloat, which it did until August 20, 1968.
 
 
 3
 In June 1968 Atlantic sold the Meadors stock to Flora Mir Distributing Co., Inc., a dummy subsidiary of Flora Mir Candy Corporation. Allegedly Atlantic went through the form of paying into an account opened for Meadors at the Royal National Bank in New York the $276,800 it had taken from Meadors to finance the purchase from Keebler, but Flora Mir refunded this immediately on the stock being transferred; the balance of the purchase price was paid to Atlantic by Flora Mir upon collection of Meadors' accounts receivable. Flora Mir then arranged to terminate Meadors' small remaining operations and was removing its property from South Carolina to Dunn, N.C., where other Flora Mir subsidiaries operated, until this process was halted by an attachment for unpaid rent by Meadors' landlord in Greenville. All operations of Meadors ended on November 15, 1968. As indicated, the holders of the Meadors debentures brought an action in November 1968 in the District Court for South Carolina for damages and injunctive relief against Keebler, Atlantic Services, the two Flora Mir companies, and Meadors, Inc. Judge Russell entered an order restraining Meadors from removing any of its property from South Carolina during the action's pendency.
 
 
 4
 On May 12, 1969, Flora Mir, Flora Mir Distributing Company, Meadors, Inc. and ten wholly owned subsidiaries of Flora Mir, which that company had picked up in the course of an acquisition program, filed petitions under Chapter XI of the Bankruptcy Act in the District Court for the Southern District of New York. While it might have been thought that by this time the cup of the unfortunate Meadors debenture holders was full, that proved not to be so. On the very same day the debtors moved for an order consolidating the proceedings of the thirteen debtors, pooling their assets and liabilities, disallowing intercompany claims, and treating claims filed against any of the debtors as having been filed in the consolidated proceeding. A hearing was held before the referee at which an accountant and the secretary of Flora Mir and all its subsidiaries testified with regard to the multitude of intercompany transactions, many without apparent business purpose, and the difficulty of disentangling them. Very little of this evidence bore on Meadors, Inc. The accountant principally relied on the period from December 31, 1968 through May 11, 1969, when Meadors was largely defunct.[1] There was also testimony that the trade had considered all the debtors as a group, but this again had little to do with Meadors which had transacted little business after its acquisition by Flora Mir in June 1968 and none since November of that year. The Meadors debenture holders vigorously opposed consolidation. However, the referee signed, without any material change, findings of fact and conclusions of law submitted by the attorneys for the debtors[2] and entered an order directing that the proceedings and the assets and liabilities of the debtors should be consolidated and that intercompany claims should be disallowed upon the confirmation of an arrangement.
 
 
 5
 The first ray of light for the Meadors debenture holders in many years was shed when their petition to review this order came before a district judge possessed of robust common sense. On examining the evidence Judge Murphy found it to be 'grossly insufficient to prompt a court of equity' to consolidate Meadors with the other debtors.[3] Accordingly he set aside the order insofar as it concerned Meadors, Inc.
 
 
 6
 The decision was so manifestly correct that we should hardly have written an opinion were it not to make it plain that referees should not order consolidation on so flimsy a basis as was done here. While the term has a disarmingly innocent sound, consolidation in bankruptcy, in the form directed in this case, is no mere instrument of procedural convenience, such as consolidation of actions under F.R.Civ.P. 42(a), but a measure vitally affecting substantive rights. The Supreme Court has told us time and again that 'courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity,' Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). The inequity of consolidation could scarcely be clearer than in this case. The debentures had been issued when Meadors was an independent company, more than six years before its acquisition by Flora Mir. Yet we have stated that even when the interrelationship already existed at the time credit was extended, 'The power to consolidate should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationship with others,' Chemical Bank New York Trust Co. v. Kheel, 369 F.2d 845, 847 (1966). Here there was a near certainty of unfair treatment. Consolidation not only would wipe out Meadors' claim against Flora Mir for the misappropriation of its assets but also would permit the creditors of Flora Mir and the other corporations to share in any recovery in the South Carolina action against Keebler and Atlantic Services for transactions antedating Meadors' joining the Flora Mir group-- transactions in which these creditors had not the slightest legitimate interest. We doubt that any showing of accounting difficulties would warrant consolidation under such circumstances, at least if the Meadors creditors were willing to confine themselves to assets that were obviously theirs. But here there was no evidence, such as in the Chemical Bank case cited, that 'the interrelationships of the group are hopelessly obscured and the time and expense necessary even to attempt to unscramble them so substantial as to threaten the realization of any net assets for all the creditors, * * *' 369 F.2d at 847. To the contrary, the accountants in relatively short order had managed to come up with financial statements of each of the debtors.[4] Whatever problems there might be with respect to intercompany accounts among other debtors, those with respect to Meadors were few, for the reasons stated.
 
 
 7
 The grounds urged for reversing Judge Murphy's well-considered order are wholly unpersuasive. Counsel tells us that the proposed arrangement would relieve the Meadors debenture holders of their subordinated status and that they would be better off as general creditors of the consolidated group than as subordinated creditors of Meadors. They do not think so. Counsel is also concerned whether Meadors' general creditors may not suffer if consolidation is denied. None have shown sufficient interest to make themselves heard. Reference was made to an agreement with a factor whereby assets of various companies, including Meadors, were pledged to guarantee loans extended to any one, but this is hardly a problem beyond the capacity of a bankruptcy court to resolve. The nub of counsel's argument was that only consolidation will permit the quick consummation of an arrangement under Chapter XI. That may indeed be desirable but not at the cost of sacrificing the rights of Meadors' debenture holders. The latter stand entirely differently from trade creditors of companies long in the Flora Mir group, who may be content to take what they can for past debts in the hope of advantageous relations in the future. Moreover, there is nothing to suggest that if such creditors, instead of attempting to profit from a quick consolidation, had sat down with the Meadors' debenture holders in an effort to develop an equitable plan whereby Meadors' creditors would retain the assets particularly pertinent to them, with a reasonable adjustment in their other rights, the debenture holders would have turned a deaf ear. In any event, the South Carolina action is scheduled for early trial, and a resolution there will do much to clear the air.
 
 
 8
 In addition to seeking consolidation, the debtor moved in July 1969 that the referee direct the turnover to it of the assets of Meadors at its Greenville, S.C. plant whose removal from the state had been enjoined by the South Carolina district court in the debenture holders' suit. After a hearing, the referee made an endorsement stating that, despite his jurisdiction over the South Carolina property, which no one contested, 'this is not at one with vacating a stay granted by a District Judge to maintain the status quo,' especially since application could be made to Judge Russell to vacate the stay. On a petition by the debtors to review this denial of a turnover, Judge Murphy affirmed. So do we. The debtors' main argument, that it would be nice to have Meadors' South Carolina machinery moved to North Carolina for use in the operations of the other companies, is destroyed by our decision with respect to consolidation. Beyond that, the referee surely did not abuse his discretion in refusing to set at naught an order of a district judge antedating the filing of the Chapter XI proceedings.
 
 
 9
 Affirmed on both appeals.
 
 
 
 *
 Senior Circuit Judge of the District of Columbia, sitting by designation
 
 
 [1]
 Debtors-appellants refer to three checks 'as illustrations of the countless intercompany transfers and transactions items specifically relative to Meadors, Inc.' These turn out to be a $100 check from Meadors to Wellons Candy Co., a $100 check from Borah Nut Co. to Meadors, and a $900 check from Meadors to Borah Nut Co. Reference is made also to a schedule indicating that Meadors 'has made advances to seven of the other debtors aggregating $433,054.92 and has been advanced by three of the other debtors sums aggregating $96,896.18.' The brief neglects to point out that the most sizeable item was $331,950.00 'advanced' to Flora Mir Distributing Co., apparently to enable the latter to purchase Meadors' stock from Atlantic Services
 
 
 [2]
 We have frequently noted our disapproval of this practice except, as recently stated by the First Circuit in In re Las Colinas, Inc., 426 F.2d 1005, 1009 (1970), 'where the subject matter is of a highly technical nature requiring expertise which the court does not possess,' United States v. Forness, 125 F.2d 928, 942 (2 Cir.), cert. denied, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942); City of New York v. McLain Lines, Inc., 147 F.2d 393, 395 (2 Cir. 1945); Rooted Hair, Inc. v. Ideal Toy Corp., 329 F.2d 761, 769, cert. denied, 379 U.S. 831, 85 S.Ct. 63, 13 L.Ed.2d 40 (1964) (concurring opinion of Medina, J.). See also United States v. El Paso Natural Gas Co., 376 U.S. 651, 656-657, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964); 2B Barron & Holtzoff, Federal Practice & Procedure (Wright ed. 1961), 1124
 
 
 [3]
 The judge noted that the accountant was unable to state he had encountered any difficulty in separating the Meadors transactions from those of Flora Mir and its other subsidiaries. He had not worked on Meadors' books for the period prior to January 1, 1969, and an unidentified voice in the courtroom said that some previous accountant had worked up the figures for the previous period
 
 
 [4]
 The accountant's report does note that 'No segregation for raw materials could be made as between (three other Flora Mir subsidiaries) and Meadors, Inc. as all operate out of the Dunn plant.' Since all these raw materials appear to have been pledged, this was not highly consequential