WINTER, Circuit Judge:
This appeal concerns the substantive consolidation of two bankruptcy proceedings. We reverse because the consolidation impairs the rights of certain creditors, principally Union Savings Bank (“Union”), which extended credit to Augie’s Baking Company, Ltd. (“Augie’s”), before Augie’s had any relationship with Restivo Brothers Bakers, Inc. (“Restivo”). In turn, it also unfairly benefits later creditors of Restivo and Augie/Restivo, principally Manufacturers Hanover Trust Company (“MHTC”), who were aware of the debtors’ separate corporate status.
BACKGROUND
Prior to 1985, Augie’s and Restivo were two unrelated family-run wholesale bakeries. Augie’s was located on Long Island in Central Islip and was a borrower of appellant Union. Restivo was based in Queens and was a borrower of MHTC. Between July 1983 and September 1984, Union loaned Augie’s approximately $2.1 million, secured by a mortgage on Augie’s real *517 property in Central Islip, to finance an apparently improvident expansion.
In early November 1984, Augie’s borrowed an additional $300,000 from Union, secured by its inventory, equipment and accounts receivable. Union was at the time unaware that Augie’s had commenced negotiations with Restivo. On November 27, 1984, Augie’s and Restivo entered into an agreement providing for Restivo’s acquisition of all of Augie’s stock in exchange for fifty percent of Restivo’s stock. In the agreement, Augie’s represented that it had receivables of over $630,000 and equipment and inventory valued at over $1.9 million. No provision for the legal transfer of Augie’s real property or equipment to Restivo was made, and no such transfer occurred. Augie’s thus remains the owner of that property.
After the exchange of stock on January 1, 1985, Restivo changed its name to Au-gie/Restivo Baking Company, Ltd. (“Au-gie/Restivo”) and moved its manufacturing operations and some of its equipment from Brooklyn to Augie’s plant in Central Islip. Augie’s affairs were wound up and Restivo became the sole operating company, keeping a single set of books and issuing financial statements under the name Au-gie/Restivo. Augie’s was not dissolved, however. From January through April 1985, MHTC extended further credit to Au-gie/Restivo in the amount of $750,000. MHTC also sought and received a guarantee of Augie/Restivo’s obligations from Augie’s, including a subordinated mortgage on Augie’s real property in Central Islip in the sum of $750,000. By March 1986, MHTC had advanced a total of approximately $2.7 million to Augie/Restivo. During the period January 1985 through March 1986 various other firms extended trade credit to Augie/Restivo.
In April 1986, Augie/Restivo and Augie’s were forced into bankruptcy. Union was listed as a creditor of Augie’s only. Following the consolidation of the cases for procedural purposes, Augie/Restivo and MHTC entered into a series of more than twenty-five “cash collateral” stipulations, in which it was agreed that Augie/Resti-vo’s accounts receivable constituted cash collateral (as defined in 11 U.S.C. § 363(a) (1982 & Supp. IV 1986)). The cash collateral was placed in a special account at MHTC from which MHTC agreed to make loans to Augie/Restivo in a sum equivalent to the cash collateral deposits. The loans were secured by the assets of Augie/Resti-vo, as debtor-in-possession, and carried a super-priority administrative expense status. Over time, the cash collateral stipulations were renewed in greater and greater amounts until eventually the entire amount of MHTC’s pre-petition loans to Au-gie/Restivo, $2.7 million, had been converted to post-petition super-priority administrative debt, secured by Augie/Restivo’s accounts receivable and by the subordinated mortgage on Augie’s real property.
On November 30, 1987, the debtors agreed, conditioned upon confirmation of a reorganization plan, to sell their assets to Leon’s Bakery for approximately $7.5 million. Apparently because Union could prevent confirmation of such a plan with regard to Augie’s, the debtors moved for substantive consolidation of the two cases on December 17, 1987. Union opposed the motion. The bankruptcy court judge granted the motion on February 5, 1988, 84 B.R. 315, finding that Augie’s and Restivo had merged and that the contemplated sale of assets to Leon’s was in the interests of the creditors of both companies.
After the consolidation motion was granted, the proposed sale fell through because of difficulty in obtaining financing. If the consolidation stands, the equity in Augie's assets will be used to pay the debts of Augie/Restivo and Restivo, including the $2.7 million super-priority administrative debt to MHTC and certain priority tax liabilities in a sum over $1.2 million. Although Union’s loan secured by the mortgage on Augie’s real property will continue to have priority as to that property, Union’s subsequent now undersecured $300,000 loan will be subordinated to MHTC’s super-priority administrative debt. Union appealed the substantive consolidation to the district court, and Judge Weinstein affirmed.
*518 DISCUSSION
Substantive consolidation has no express statutory basis but is a product of judicial gloss.[1] See, e.g., In re Commercial Envelope Mfg. Co., 3 B.C.D. 647 (Bankr.S.D.N.Y.1977). Substantive consolidation usually results in, inter alia, pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans. See 5 Collier on Bankruptcy § 1100.06, at 1100-32 n. 1 (L. King ed. 15th ed. 1988). The effect in the present case is, as stated, to subordinate Union’s undersecured claims against Au-gie’s to MHTC’s super-priority administrative claims. Because of the dangers in forcing creditors of one debtor to share on a parity with creditors of a less solvent debtor, we have stressed that substantive consolidation “is no mere instrument of procedural convenience ... but a measure vitally affecting substantive rights,” Flora Mir Candy Corp. v. R.S. Dickson & Co., 432 F.2d 1060, 1062 (2d Cir.1970), to “be used sparingly.” Chemical Bank New York Trust Co. v. Kheel, 369 F.2d 845, 847 (2d Cir.1966).
The sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors. Numerous considerations have been mentioned as relevant to determining whether equitable treatment will result from substantive consolidation. See, e.g., In re Continental Vending Machine Corp., 517 F.2d 997, 1001 (2d Cir.1975) (whether creditors knowingly deal with corporations as unit), cert. denied sub nom. James Talcott, Inc. v. Wharton, Trustee, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976); Flora Mir, 432 F.2d 1060 (whether one debtor was independent of other debtor when certain securities issued; whether creditor dealt only with one debtor and lacked knowledge of its relationships with others; whether interrelationships of group were closely entangled); Kheel, 369 F.2d 845 (whether entanglement of business affairs of related corporations was so extensive that the cost of untangling would outweigh any benefit to creditors); In re Donut Queen, Ltd., 41 B.R. 706 (Bankr.E.D.N.Y.1984) (presence or absence of consolidated financial statements; difficulty in segregating individual debtors’ assets and liabilities; existence of parent and inter-corporate guarantees on loans; unity of interests and ownership; existence of transfers of assets without observance of corporate formalities; profitability of consolidation at single physical location); In re Richton Int’l Corp., 12 B.R. 555 (Bankr.S.D.N.Y.1981) (same); In re Food Fair, 10 B.R. 123 (Bankr.S.D.N.Y.1981) (same). An examination of those cases, however, reveals that these considerations are merely variants on two critical factors: (i) whether creditors dealt with the entities as a single economic unit and “did not rely on their separate identity in extending credit,” 5 Collier on Bankruptcy § 1100.06, at 1100-33; see also Flora Mir, 432 F.2d at 1062-63; Kheel, 369 F.2d at 847; Soviero v. Franklin Nat. Bank, 328 F.2d 446 (2d Cir.1964) (consolidation proper where creditors dealt with debtor and its affiliates as if they were one corporation and failed to demonstrate reliance on credit of any separate judicial entity); In re D.H. Overmyer, 2 B.C.D. 412 (Bankr.S.D.N.Y.1976); or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors, Kheel, 369 F.2d at 847; Commercial Envelope, 3 B.C.D. at 649-52.
With regard to the first factor, creditors who make loans on the basis of the financial status of a separate entity expect to be able to look to the assets of their particular borrower for satisfaction of that loan. Such lenders structure their loans according to their expectations regarding that borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor *519 compete for the borrower’s assets. Such expectations create significant equities. Moreover, lenders’ expectations are central to the calculation of interest rates and other terms of loans, and fulfilling those expectations is therefore important to the efficiency of credit markets. Such efficiency will be undermined by imposing substantive consolidation in circumstances in which creditors believed they were dealing with separate entities.
The course of dealing and expectations in the instant case do not justify consolidation. It is undisputed that Union’s loans to Augie’s were based solely upon Augie’s financial condition, and that, at the time the loans were made, Union had no knowledge of the negotiations between Augie’s and Restivo. MHTC also operated on the assumption that it was dealing with separate entities. MHTC thus sought and received a guarantee from Augie’s of MHTC’s loans to Augie/Restivo in 1985, including a subordinated mortgage on Au-gie’s real property. Union’s claims against Augie’s assets are thus clearly superior to those of MHTC. Given these circumstances, the fact that the trade creditors may have believed that they were dealing with a single entity does not justify consolidation. Upon a proper showing, the interests of the trade creditors can be protected by their participating in Augie’s case as creditors of that entity. See 2 Collier on Bankruptcy § 101.04, at 101-20-21. The fact that they may have been unaware of Augie’s separate corporate status is not cause for subordinating Union’s claims to those of MHTC by substantively consolidating the two cases.
The second factor, entanglement of the debtors’ affairs, involves cases in which there has been a commingling of two firms’ assets and business functions. Resort to consolidation in such circumstances, however, should not be Pavlovian. Rather, substantive consolidation should be used only after it has been determined that all creditors will benefit because untangling is either impossible or so costly as to consume the assets. Otherwise, for example, a series of fraudulent conveyances might be viewed as resulting in a “commingling” that justified substantive consolidation. That consolidation, because it would eliminate all inter-company claims, would prevent creditors of the transferor from recovering assets from the transferee. Commingling, therefore, can justify substantive consolidation only where “the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors,” Kheel, 369 F.2d at 847; Commercial Envelope, 3 B.C.D. at 648, or where no accurate identification and allocation of assets is possible. In such circumstances, all creditors are better off with substantive consolidation.
The evidence of commingling of assets and business functions in the instant case in no way approaches the level of “hopeless[ ] obscurpty]” of “interrelationships of the group” found necessary to warrant consolidation in Kheel, 369 F.2d at 847. Business functions may have been commingled, but that hardly weighs in favor of consolidation in the instant case because the principal beneficiary of consolidation, MHTC, was not deceived and fully realized it was dealing with separate corporate entities. So far as the commingling of assets is concerned, Augie’s real property and equipment appear to be traceable. The record also indicates that each company’s inventory, liabilities and receivables as of January 1, 1985 are identifiable. It also appears that records exist of all transactions subsequent to that date.
A cornerstone of the bankruptcy court’s decision with regard to the entanglement issue was its finding that there had been a merger between Augie’s and Restivo. That finding is clearly erroneous. The two corporations were never legally merged because: (i) they failed to comply with the laws of merger under New York law; (ii) neither corporation was ever dissolved; and (iii) Augie’s never formally transferred its assets and retains ownership of the Central Islip facility. Furthermore, the requirements for the finding of a de facto merger were not met. In Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 *520 F.Supp. 834 (S.D.N.Y.1977), the prerequisites for a de facto merger were summarized:
[T]o find that a de facto merger has occurred there must be a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation, and the assumption of liabilities by the purchaser.
431 F.Supp. at 839 (citing Shannon v. Samuel Langston Co., 379 F.Supp. 797, 801 (W.D.Mich.1974)). Several of these requirements are unfulfilled in the instant case. First, there was no dissolution of Augie’s, which remains an independent corporate entity. Second, Restivo did not assume Augie’s liabilities. Third, no transfer of title to Augie’s real property or equipment has ever taken place. Although there was continuity of shareholders in the transaction in the sense that the former shareholders of Augie’s and Restivo became the new shareholders of Augie/Restivo, this alone does not sustain a finding of a de facto merger.
We turn now to the bankruptcy judge’s finding that the proposed reorganization plan and sale justified the consolidation because consolidation would benefit the creditors of both companies. We do not pause to scrutinize her various speculations as to events that would occur if the proceedings were to continue separately because we do not believe that a proposed reorganization plan alone can justify substantive consolidation. Where, as in the instant case, creditors such as Union and MHTC knowingly made loans to separate entities and no irremediable commingling of assets has occurred, a creditor cannot be made to sacrifice the priority of its claims against its debtor by fiat based on the bankruptcy court’s speculation that it knows the creditor’s interests better than does the creditor itself. The rationale of the bankruptcy judge in the instant case would allow consolidation of two completely unrelated companies upon a finding that the creditors would be better off under some proposed plan involving the joint sale of their assets. The plan would then be approved under “cram-down” provisions that would subordinate the wishes of the creditors of one debtor to those of the other. We do not read the bankruptcy code to allow such a result. Where substantive consolidation is not otherwise justified, a proposed buyer can make contingent offers for each debtor so that priorities among creditors can be preserved.[2]
The plain fact is that Union’s claim against Augie’s assets is superior to that of MHTC, and, as a result, the undesirability of consolidation is as clear in the instant case as it was in our earlier decision in Flora Mir. In Flora Mir, a corporation and twelve of its subsidiaries filed for bankruptcy. The debtors moved to consolidate substantively the proceedings relating to the thirteen companies. The primary asset of Meadors, Inc., one of the subsidiaries, was a misappropriation claim against Flora Mir, which, as an inter-company claim, would have been eliminated in substantive consolidation. Certain debenture creditors of Meadors opposed the consolidation on the ground that they had extended credit to Meadors six years before it was acquired by Flora Mir and had relied solely on Meadors’s balance sheet in making the loan. 432 F.2d at 1062. Even though there was some evidence of financial entanglement among the companies, we held that a consolidation was inequitable to Meadors’s debenture creditors because, in consolidation, the assets of their debtor would be distributed to the creditors of all thirteen companies, robbing them of the benefit of their bargain. Id. at 1062-63. We did so even though the denial of consolidation would thwart an otherwise desirable arrangement among creditors under Chapter IX. As Judge Friendly stated in Flora Mir, “The nub of counsel’s argument was that only consolidation will per *521 mit the quick consummation of an arrangement under Chapter IX. That may indeed be desirable but not at the cost of sacrificing the rights of Meadors’ debenture holders.” Id. at 1063 (emphasis added).
Union is in the same position as were the debenture holders in Flora Mir. The result of substantive consolidation in the instant case would be to make the assets of Augie’s available to pay the debts of Au-gie/Restivo, and to enrich MHTC (whose entire pre-petition loans to Augie/Restivo have been converted to fully-secured post-petition super-priority administrative debt pursuant to the cash collateral stipulations) at the expense of Union. Even if the reorganization and sale remained viable, moreover, there would be no justification for submitting Union to “cram-down” procedures dominated by creditors of Au-gie/Restivo.
REVERSED.

. Courts have found the power to consolidate substantively in the court’s general equitable powers as set forth in 11 U.S.C. § 105 (1982 & Supp. IV 1986). See, e.g., In re Donut Queen, Ltd., 41 B.R. 706, 708-09 (Bankr.E.D.N.Y.1984); In re Richton Int'l Corp., 12 B.R. 555, 557 (Bankr.S.D.N.Y.1981).

. The recent falling through of the sale to Leon's reveals the bankruptcy court’s decision to be all the more misguided, because the principal effect of consolidation is now a windfall for MHTC.