328 F.2d 446
 Joseph F. SOVIERO, Jr., Trustee in Bankruptcy of Raphan
Carpet Corporation, Trustee-Appellee,
v.
The FRANKLIN NATIONAL BANK OF LONG ISLAND, Claimant-Appellant.
 No. 162, Docket 28262.
 United States Court of Appeals Second Circuit.
 Argued Nov. 8, 1963.
Decided Feb. 24, 1964.
 
 Abraham & Koenig, New York City (Jacob W. Abraham and Herbert J. Silver, New York City, of counsel), for trustee-appellee.
 Levin & Weintraub, New York City (Elias Mann, New York City, and Herman A. Bursky, Brooklyn, of counsel), for claimant-appellant.
 Before WATERMAN, MOORE and SMITH, Circuit Judges.
 LEONARD P. MOORE, Circuit Judge.
 
 
 1
 Pursuant to an order to show cause, the Trustee in bankruptcy of the Raphan Carpet Corporation sought an adjudication that the assets of thirteen separate corporations, each bearing 'Raphan' in its corporate name ('Affiliates') and the assets of the 1081 Hempstead Turnpike Realty Corp. ('Realty') in fact belonged to the bankrupt, and requested leave to sell the fixtures of certain Affiliates free and clear of liens and encumbrances. The Franklin National Bank of Long Island (the 'Bank') by answer, claimed a lien on the fixtures of those Affiliates which had executed chattel mortgages securing a loan made by it to the bankrupt. The Bank alleged that the fixtures were owned by the Affiliates and were not the bankrupt's property, and that the Referee in bankruptcy lacked jurisdiction to summarily adjudicate title to property adversely held without the instigation of a plenary suit. After a hearing, the Referee determined that the assets of the Affiliates and Realty belonged to the bankrupt and that they should be administered as part of the bankrupt estate. The Referee's findings and turnover order were confirmed by the District Court. The Bank appeals.
 
 
 2
 The preliminary question to be determined is whether the court properly exercised summary jurisdiction or whether a plenary suit was necessary. 'A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court.' Cline v. Kaplan, 323 U.S. 97, 98, 65 S.Ct. 155, 156, 89 L.Ed. 97 (1944); see also Thompson v. Magnolia Co., 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876 (1940). Where the trustee does not have actual physical possession, as in the case at bar, jurisdiction turns on constructive possession. The bankrupt and, consequently, the court, is deemed to have constructive possession where at the time of the filing of the petition in bankruptcy the property in question is held by one whose adverse claim lacks substance and is at best only colorable. However, where the adverse claim " discloses a contested matter of right, involving some fair doubt and reasonable room for controversy," and is not 'without color of merit, and a mere pretense,' Harrison v. Chamberlin, 271 U.S. 191, 195, 46 S.Ct. 467, 469, 70 L.Ed. 897 (1926), the merits of the claim can be determined only in a plenary suit. See Sahn v. Pagno, 302 F.2d 629 (2d Cir.), cert. denied, 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962); In re Meiselman, 105 F.2d 995, 997 (2d Cir. 1939). See generally 2 Collier, Bankruptcy, P23.07 (14th ed. 1962); Seligson and King, Jurisdiction and Venue in Bankruptcy, 36 Ref.J. 36, 37 (1962). On this appeal we must determine whether the adverse claims of corporate separateness presented such a fair doubt or a reasonable controversy as to render the Referee's order piercing the corporate entities unjustified.
 
 
 3
 At the hearing before the Referee, the facts surrounding the various Raphan enterprises were not in dispute. The Referee found that Henry S. Raphan and Herman Raphan were President and Secretary, respectively, the sole directors and stockholders of the bankrupt, the Affiliates and Realty. The Affiliates, like the bankrupt, were engaged in selling carpeting at retail. Realty, as the name suggests, owned the land and building where the bankrupt conducted business. The bankrupt paid the monies to finance the organization of the Affiliates and Realty. Although each corporation filed separate tax returns, individual accounting records were kept by the same staff of bookkeepers at the bankrupt's place of business. None of the corporations maintained corporate minutes reflecting their activities. Henry S. Raphan informed creditors that the bankrupt was a consolidated enterprise and issued a consolidated financial statement which listed, without separation, assets of the Affiliates and Realty as those of the bankrupt. The Affiliates had no working capital and whenever they required funds they were provided by the bankrupt with bookkeeping entries setting up the payments as loans and exchanges. When one Affiliate failed, the bankrupt paid the losses. In almost all instances, the bankrupt signed and remained liable on the Affiliates' leases, provided security deposits where necessary, and at times paid rent for some of them.
 
 
 4
 The Affiliates were situated in various cities in New York, Connecticut and New Jersey, while the bankrupt was located on Long Island. Although each Affiliate maintained a bank account from which it paid local obligations, such as rent and utilities, the proceeds of their carpet sales were turned over to the bankrupt for deposit in its account. The Affiliates sold only by sample. Inventories were arbitrarily assigned to each one at the end of the year where they were reflected in the consolidated financial statement and relied upon for tax purposes. Suppliers shipped merchandise directly to the Affiliates, but billed, and were paid by, the bankrupt. The bankrupt paid all labor charges for installation of carpets sold by the Affiliates, their advertising charges, union dues and welfare payments, insurance and accounting charges, and at the end of the year charged each Affiliate with an arbitrary portion thereof by bookkeeping entries. All guarantees given to purchasers were in the bankrupt's name and did not mention the Affiliate which made the sale. The bankrupt's stationery and advertising referred to the Affiliates as branches.
 
 
 5
 The Referee found that the bankrupt had conveyed gratuitously to Realty its only asset, the land and building where the bankrupt was located. The bankrupt was the sole tenant of the property, and no lease existed and no rental was paid. Payment of principal and interest on mortgages, taxes, insurance and other expenses of Realty was made by the bankrupt by issuing checks in the exact amount required to Realty which in turn would issue its own check for the same sum.
 
 
 6
 From these and many other facts, the Referee concluded that the Affiliates and Realty were but instrumentalities of the bankrupt with no separate existence of their own. Consequently, there existed a unity of interest and ownership common to all corporations, and that to adhere to the separate corporate entities theory would result in an injustice to the bankrupt's creditors.
 
 
 7
 It is difficult to imagine a better example of commingling of assets and functions and of the flagrant disregard of corporate forms than as here demonstrated by the bankrupt. One gains the distinct impression that the bankrupt held up the veils of the fourteen collateral corporations primarily, if not solely, for the benefit of the tax gatherer, but otherwise completely disregarded them. Even Salome's could not have been more diaphanous. On these facts, we are convinced that the claims of individual corporate entities advanced for the Affiliates and Realty are 'without color of merit, and a mere pretense.' Harrison v. Chamberlin, supra, 276 U.S. at 195, 46 S.Ct. at 469, 70 L.Ed. 897. The Referee's use of a summary proceeding was thus entirely proper. See Fish v. East, 114 F.2d 177 (10th Cir. 1940); In re Schoenberg, 70 F.2d 321 (2d Cir. 1934); In re Eilers Music House, 270 F. 915 (9th Cir.), cert. denied, 257 U.S. 646, 42 S.Ct. 55, 66 L.Ed. 414 (1921); In re Muncie Pulp Co., 139 F. 546 (2d Cir.), cert. denied, 202 U.S. 621, 26 S.Ct. 766, 50 L.Ed. 1175 (1905).
 
 
 8
 Although we hold that the Referee properly decided the preliminary jurisdictional issue, the question of the propriety of the issuance of the turnover order remains. A turnover order is 'a judicial innovation by which the court (of bankruptcy) seeks efficiently and expeditiously to accomplish ends prescribed by the statute.' Maggio v. Zeitz, 333 U.S. 56, 61, 68 S.Ct. 401, 92 L.Ed. 476 (1948). We cannot agree with the Bank's contention that the corporate veils may be pierced only where the Referee finds that the subsidiary corporations were organized to defraud or hinder creditors. Cf. Bankruptcy Act, 67(d) 11 U.S.C.A. 107(d). Contra, Maule Industries Inc. v. Gerstel, 232 F.2d 294 (5th Cir. 1956). In Stone v. Eacho, 127 F.2d 284 (4th Cir.), cert. denied, 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942), where the facts closely resembled those of the instant case, the court affirmed the issuance of the turnover order, ignoring the corporate entity of a subsidiary corporation, for only then could 'all the creditors receive that equality of treatment which it is the purpose of the bankruptcy act to afford.' 127 F.2d at 288. A similar conclusion is fully warranted here.
 
 
 9
 The district court's confirmation of the turnover order is affirmed.