In re Vencil Ratliff **BARNETT**, Debtor.

Bankruptcy No. 79–01280P.

United States Bankruptcy Court,
D. New Mexico.

June 13, 1980.

Charles W. Durrett, Alamogordo, N.M., Gerald P. Urbach, Dallas, Tex., for debtor.

## ORDER DENYING CONFIRMATION

LOUIS PUCCINI, Jr., Bankruptcy Judge.

This cause is a Chapter 11 proceeding filed pursuant to the Bankruptcy Code on December 5, 1979. The Debtor, V. R. Barnett, an individual, promptly filed his Plan and a Motion to consolidate this cause into a prior long pending Chapter XI Bankruptcy Act proceeding, captioned Barnett Feed Yards, Inc., Cause No. B75–812.

A brief recital of the facts concerning the Barnett Feed Yards is appropriate. Barnett Feed Yards, Inc., a corporation, was filed on June 16, 1975, under Chapter X of the 1898 Bankruptcy Act. The proceedings in this case have been very lengthy, involving a number of appeals and conversions to different Chapters of the Bankruptcy Act. The debtor filed its present Chapter XI petition on September 10, 1979, and the case since that date has remained in that posture. There was no Plan of Arrangement ever effected in that case, the creditors still remain unpaid.

The Debtors filed a joint, identical Plan of Arrangement in both the Chapter XI and in this case. The Plan of Arrangement requires the consolidation of this case into the Chapter XI proceeding, so that certain requirements of the Farmers Home Administration (FHA), which may provide refinancing under an emergency disaster relief provision, can be met. The Debtor and the creditors have been overwhelming in their support of the consolidated joint Plan of Arrangement, as it appears that the pending Plan providing FHA financing will allow the Debtors to reopen their businesses, to employ a significant number of persons, allow the secured creditors to be paid in full and enable a significant payment to unsecured creditors. This Plan presents the most likely, if not the only, opportunity for the Debtors to rehabilitate themselves.

The Court has reviewed all of the authorities cited in support of the consolidation, and is aware of the authority to support consolidation of cases in bankruptcy reorganization proceedings. These include consolidating cases upon a finding of extensive co-mingling of assets, interrelated business functions, and the existence of a unity of interest and ownership common to the Debtor companies. *Soviero v. The Franklin National Bank of Long Island*, 328 F.2d 446 (2d Cir., 1964). Consolidation has also been accomplished where there are subsidiary corporations which have been operated as a single unit so as to hopelessly obscure the inter-relationship between them. Consolidation may also be appropriate to conserve assets and permit expeditious administration. *In the Matter of Rondon Trading Corp. and S. W. Exporters, Inc.*, 18 CBC 120 (B.J., N.Y.1978). The principles involving substantive consolidation are well covered in Judge Babbitt's decision in *Commercial Envelope Manufacturing Co., Inc., et al.*, 14 CBC 191 (S.D.N.Y.1977).

Although consolidation may be proper in certain cases, there are complications which can be created by the consolidation itself. One problem which is rarely considered is the changing status of creditors in the respective pleadings. The power to consolidate should "be 'used sparingly' because of the possibility of unfair treatment to creditors who have dealt solely with the corporation having a surplus as opposed to those who have dealt with the related entities with deficiencies." *In Re Continental Vending Machine Corp.*, 517 F.2d 997 (2d Cir., 1975).

The Court is mindful of the equities in favor of consolidation. *Chemical Bank, New York Trust Company v. Kheel*, 369 F.2d 845 (2d Cir., 1966), *In Re Continental Vending Machine Corp., supra*. However, there appear to be no precedents for consolidation in this case.

In these Barnett cases, no creditor has objected to the consolidation. However, consolidating a Bankruptcy Code case into a Bankruptcy Act case could drastically alter and complicate any future disputes, including but certainly not limited to priorities and preference periods. A complete comparison of possible conflicts would be

impossible here as that analysis would amount to a lengthy contrast between the Code and the Act.

There is, however, already one tangible problem and that is the Debtors proposal to avoid the filing of a Disclosure Statement required pursuant to 11 U.S.C. § 1125(b) (1978) of the Bankruptcy Code, since they contend that consolidating the Code case into the Act case will "avoid the disclosure statement requirements," "which would unduly lengthen this proceeding and because the Barnett Feed Yards case proceeding has been pending for quite some time with the Barnett proceeding being filed in order to comply with the FHA requirements of the loan." This Court is not convinced that the requirements of the Code can so easily be avoided. There has been no disclosure statement filed in this case.

11 U.S.C. § 403 (1978) states that all cases "commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted . . ." Therefore, the pending Barnett Feed Yards, Inc. Chapter XI proceedings are to be governed by the 1898 Bankruptcy Act as though the Bankruptcy Code had not been enacted. 11 U.S.C. § 402 (1978) indicates the Act is to take effect on October 1, 1979, and 11 U.S.C. § 401 (1978) indicates that the Bankruptcy Act is repealed as of that date.

The only section of the new Bankruptcy Code dealing with consolidation and joint administration is 11 U.S.C. § 302 (1978) Fed.R.Bankr.P. 117(b), which appears to remain valid. The Interim Rules have no comment on consolidation or joint administration. The transitional provisions of the Code contain nothing on this issue.

The legislative comments state:
Subsection (b) requires the court to determine the extent, if any, to which the estates of the two debtors will be consolidated; that is, *assets and liabilities combined in a single pool to pay creditors.* Factors that will be relevant in the court's determination include the extent of jointly held property and the amount of jointly-owed debts. *The section,* of course, *is not license to consolidate in order to avoid other provisions of the title* to the detriment of either the debtors or their creditors. It is designed mainly for ease of administration. (Emphasis added). H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin. News 1978, p. 5787; S.Rep. No. 989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

The legislative comments point out the basis problems in this case in requiring a Code case to be administered under the Bankruptcy Act. Further, this proposed consolidation could effect and avoid other basic provisions of the Code. This Court does not know what, if any, further issues may be raised in the case, but the obvious immediate result would be that the Chapter 11 case, assets and debts, if consolidated, would be avoiding the requirements of a disclosure statement as required by 11 U.S.C. § 1125(b) (1978). This violates the stated legislative intent. This is only one example of the potential conflict in consolidating the case, there could be other directly conflicting provisions.

"The substantive rights of the creditors of the different estates are affected by consolidation." 2 *Collier on Bankruptcy* ¶ 302.05, 302–8, (15th ed. 1979). This proposed consolidation does much more than merely ease administration of two related cases under substantive and procedural law. Both the substantive rights of the creditors and debtors are affected by the new Code and the procedural administration is affected by the new Code and the Interim Rules. The old Federal Rules of Bankruptcy Procedure continue to apply only to the extent they are not inconsistent with the new statute until new rules of procedure are promulgated. 11 U.S.C. § 405(d) (1978).

Not only are the substantive and procedural changes significant, the Debtors are basically requesting that a case filed after October 1, 1979, be administered as an old Bankruptcy Act case. This appears to be contrary to the obvious intent of Congress. (11 U.S.C. §§ 401, 402 (1978)). The Debtor has cited no case authority permitting consolidation of an Act and a Code case, and this Court has found none. However,

where an old Act, Chapter XII case, was dismissed on October 1, 1979, a Bankruptcy Court held that the Debtor was thereby precluded from *any opportunity* to file another petition under Chapter XII of the Bankruptcy Act or to file a voluntary petition in straight bankruptcy under that Act since that Act no longer existed. *In Re Macon Uplands Venture*, 2 B.R. 421, 1 CBC 2d 246 (Bkrtcy.D.Md.1979).

One of the FHA conditions to funding is that "the Bankruptcy Court will agree to release from all other liabilities which would affect your farming operation and all real estate security." (See Debtor's Exhibit No. 1, letter of November 16, 1979). It would be impossible to comply with this condition by dismissing Barnett Feed Yards, Inc., and refiling it as a Chapter 11 case since corporations are not eligible for discharges under the Code. 11 U.S.C. § 727(a) (1978). The Debtors proposed consolidation is also an attempt to avoid that portion of the Bankruptcy Code in order to comply with FHA conditions, which avoidance is not a mere administrative aid, but alters substantive rights.

This Court is aware that the Debtor, Barnett Feed Yards, Inc., has been attempting to effect a viable Plan of Reorganization for five (5) years and that the present Plan from FHA presents to the Debtors their best, if not only, chance for a successful reorganization. This Court would prefer to encourage such successful reorganization, especially when virtually all of the creditors herein have approved the Plan. This Court is not unconcerned that the Debtor is making an apparent legitimate attempt to complete a successful Plan, but may be precluded from doing so by what the Debtor may consider legal technicalities. This Court has considered that factor and would prefer to confirm the Plan permitting consolidation which would please the Debtors and creditors, but the Court believes that the issues are not mere technicalities to be overlooked or bent by a court of equity seeking to confirm a popular Plan of Arrangement.

The Debtor waited until after October 1, 1979, in which to file his personal Chapter 11 proceedings despite the fact the other Chapter XI case had been pending for 4½

years. V. R. Barnett was at all times the principal and chief operating officer of Barnett Feed Yards, Inc., and he was fully aware of its continuing legal proceedings. This Court is unaware of the date on which the Debtor first became aware of the possibility of a new loan or why the new Chapter 11 was not filed until after October 1, 1979. For over 4½ years the corporate reorganization was litigated. V. R. Barnett personally never filed any bankruptcy proceedings and represented to the Court and creditors that the corporation was a sole and separate entity, legally entitled to reorganization. Now, V. R. Barnett for the first time represents that he personally guaranteed most of the debts and "there has never been a complete corporate separateness of Barnett Feed Yards, Inc., and creditors dealt with Barnett Feed Yards and Barnett as if they were one." The question arises, if that is the case, why did the Debtor, V. R. Barnett, wait for 54 months to file his petition? It is also to be noted that Mrs. V. R. Barnett still has not filed for relief in this Court.

The Court believes that the Debtor, V. R. Barnett, has inordinately delayed his request for relief and has thereby, to a degree, compromised his own request for relief. *In Re Eagson Corp.*, 1 B.R. 777, 1 CBC 2d 309 (Bkrtcy.E.D.Pa.1980).

The Debtors in conditioning confirmation of their Plan of Arrangement upon consolidation of a Chapter 11 Bankruptcy Code case into a Chapter XI Bankruptcy Act case, are attempting more than a mere facilitation of administration, and they are by the very nature of the proposed consolidation seeking to alter the substantive and procedural rights of creditors and Debtors themselves. The Debtors Plan admittedly seeks to avoid other provisions of the Code, specifically but not limited to, not filing a disclosure statement, considering the extent of community property included in a Code proceeding, avoiding the corporate non-dischargeability provisions of the Code, and the possible detrimental modification of creditors rights by proceeding under the repealed Bankruptcy Act. Consolidation of this case into Barnett Feed Yards, Inc., a Bankruptcy Act case, is not proper.

This ruling does not consider whether joint administration of these estates would be feasible since that issue was never raised by any party and was not proposed by Debtors in their consolidated Plan of Arrangement.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED the Debtor's Motion to consolidate this case into Barnett Feed Yards, Inc., Cause No. B75–812, is hereby denied.

IT IS FURTHER ORDERED that confirmation of the proposed Plan of Arrangement, as amended, being contingent upon consolidation, is hereby denied.

IT IS FURTHER ORDERED that the matter of conversion of this case to a Chapter 7, liquidating bankruptcy, or dismissal of the petition herein, shall come on for hearing on the 18th day of July, 1980, at 9:00 A.M., in the United States District Courtroom, Federal Building and United States Courthouse, Las Cruces, New Mexico.