**In re I.R.C.C., INC., et al., Debtors.**

**Bankruptcy Nos. 88 B 20320–88 B 20326, 88 B 20334 and 88 B 20335.**

United States Bankruptcy Court,
S.D. New York.

Sept. 19, 1989.

Eric Kurtzman, Nanuet, N.Y., trustee.

Joseph J. Haspel, Nanuet, N.Y., for trustee.

Schatz & Schatz, Ribicoff & Kotkin, Stamford, Conn., for Willard Gay.

Alan Garson Vogel, Bridgeport, Conn., for Citytrust.

Zalkin, Rodin & Goodman, New York City, for Council Commerce Corp.

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The trustee in bankruptcy of I.R.C.C., Inc. and eight subsidiary corporations has moved for substantive consolidation with respect to three specific subsidiaries. In the event that substantive consolidation is granted, the trustee then seeks approval of a stipulation he entered into with a commercial finance company, Council Commerce Corporation ("CCC") which advanced funds prepetition pursuant to a financing agreement with one of the subsidiaries, dated May 29, 1987. The funds advanced by CCC were used to fund the operations of all three subsidiaries and were secured by accounts receivable assigned to CCC from sales generated by the three subsidiaries. The assigned invoices bear the legend "Michaels Art Metals". Willard Gay, the Chief Operating Officer of the parent holding company and all of its subsidiaries, including the three entities for which substantive consolidation is sought, objects to

---

the trustee's motions. Willard Gay holds an unsecured claim against I.R.C.C. Acquisition Corp., d/b/a Michaels Art Metals ("Acquisition"). Acquisition is one of the three subsidiaries in question. Gay may be liable to the Internal Revenue Service for Acquisition's failure to pay certain withholding taxes.

## FINDINGS OF FACT

1. On June 17, 1989 and June 20, 1988, the parent holding company I.R.C.C., Inc. and eight subsidiary operating corporations filed with this court petitions for reorganizational relief under Chapter 11 of the Bankruptcy Code. The eight subsidiaries are:

S.W.S. Industries, Inc., d/b/a Michaels S.W.S. Industries, Inc.

Park Construction, Inc.

Michael Collier Corp.

American Videotext Services, Inc.

KPC Enterprises, Incorporated

I.R.C.C. Acquisition Corp. d/b/a Michaels Art Metals

Michaels Art Metals, Inc. f/k/a Michaels Art Bronze, Inc.

Michaels Art Metals, Inc.

2. On October 13, 1988, the Chapter 11 cases were converted for liquidation under Chapter 7 of the Bankruptcy Code. The same trustee was appointed by the United States trustee for each of the debtor corporations. On motion by the trustee in bankruptcy, this court entered an order pursuant to Bankruptcy Rule 1015(b), authorizing the joint administration of the related debtors. Joint administration is distinguished from substantive consolidation because it is simply a procedural consolidation designed for administrative convenience and does not affect the substantive rights of the creditors of the different estates.

3. The three subsidiary corporations for which the trustee seeks substantive consolidation are: (1) I.R.C.C. Acquisition Corp., d/b/a Michaels Art Metals ("Acquisition), which is a Connecticut corporation; (2) Michaels Art Metals, Inc., f/k/a Michaels Art Bronze, Inc., a Delaware corporation, and (3) Michaels Art Metals, Inc., a New York corporation. The three subsidiaries were in the business of furnishing structural metals to the construction industry and have operated as a single economic unit, referred to by the trustee as the Michaels Group.

4. In November of 1986, the objecting creditor, Willard Gay, was the president of Heritage Architectural Corporation ("Heritage"). The principal place of business of Heritage was in West Haven, Connecticut. Heritage entered into an agreement at that time with I.R.C.C. Incorporated, the parent holding company of the subsidiaries which the trustee in bankruptcy seeks to consolidate substantively. Pursuant to this agreement, Heritage transferred all of its assets to Acquisition, one of the subsidiaries in the Michaels Group, subject to the obligations of Heritage.

5. In June of 1988, just before the parent corporation and its subsidiaries filed their Chapter 11 petitions, it appeared that all of the corporations were experiencing financial difficulties with the result that members of the board of directors of the parent corporation resigned. New Management was required. The objecting creditor, Willard Gay, who was an officer of Acquisition, the subsidiary to which the Heritage assets had been transferred, then assumed the position of Chief Operating Officer of the parent corporation and all of the subsidiaries.

6. When the parent corporation and its subsidiaries thereafter filed their Chapter 11 petitions, Willard Gay executed the petitions on behalf of each debtor as Chief Operating Officer.

7. After the Chapter 11 cases were converted for liquidation under Chapter 7 of the Bankruptcy Code on October 13, 1988, and the same trustee in bankruptcy was appointed for each debtor, it became apparent to the trustee that the financial records for all the corporations were in disarray.

8. The trustee in bankruptcy could not find sufficient accounting records and financial documents to untangle the financial mess created by the former management of the debtors. The trustee discovered

that the sole source of financing for the subsidiaries referred to as the Michaels Group was money traceable to the advances made by the finance company, CCC, against various accounts receivable generated by the various subsidiaries in the Michaels Group. Funds received by one subsidiary in the Michaels Group were used to pay the expenses of the other entities. It appears that the subsidiaries in the Michaels Group had common officers and directors, commingled funds in their bank accounts, held common assets and filed consolidated tax returns.

9. The tangled financial affairs of these debtors was admitted by counsel for the various debtors in possession in their application for an extension of time to file schedules, wherein they stated in an affidavit dated July 1, 1988:

Recently, it came to the attention of the outside members of the Board of Directors of the Debtor's parent corporation, I.R.C.C., Inc., that the Debtor's then management was running the business of the Debtor and its affiliated corporations and not properly reporting to the Board of Directors. Indeed, a preliminary investigation has been made by the Board of Directors which suggests that corporate funds were diverted for what may be non-business purposes. Moreover, the Debtor's management and the management of Debtor's affiliates recently resigned and new outside management brought in who are presently engaged in a fact-finding mission to ascertain the assets and liabilities of the Debtor and its affiliates and the viability of their businesses and the prospects for successful reorganization. The books and records of the Debtor and many of its affiliates have not been posted, are not up to date and are in a state of disarray, such that much of the information necessary to file Schedules is not presently available.

10. The trustee in bankruptcy testified that his investigation of the dealings of the subsidiaries in the Michaels Group revealed that they conducted business as one economic unit and did not respect the separate entities which existed. The trustee testified that the financial affairs of the subsidiaries in the Michaels Group were so entangled that it would be virtually impossible to deal with them separately. There was no evidence submitted at the trial to rebut these facts.

11. The letterheads for the Michaels Group featured the Michaels Metals name. The names I.R.C.C. Incorporated or I.R.C.C. Acquisition Corp. do not appear on the letterheads nor do they appear on the invoices assigned to CCC. The name Michaels Art Metals appears on the invoices from the Michaels Group and customers of the subsidiaries comprising the Michaels Group made their checks payable to Michaels Art Metals. The subsidiary known as I.R.C.C. Acquisition Corp. was not originally known under that name either by CCC or by customers of the Michaels Group. Indeed, Acquisition did business under the name Michaels Art Metals. Although there were inter-company loans between the subsidiaries in the Michaels Group, there were no documents to reflect these inter-company loans, nor were there any documents or records to show that the loans were repaid.

12. The financing agreement dated May 29, 1987, pursuant to which CCC advanced secured funds to the Michaels Group, was entered between CCC and Michaels Art Bronze Acquisition Corp. of West Haven, Connecticut. This subsidiary's name was later changed to Michaels Art Metals, Inc. As consideration for its advances, CCC was given a security interest in the debtor's machinery, furniture, fixtures, inventory, contract rights, accounts and general intangibles. CCC perfected its security position by filing UCC–1 financing statements.

13. On August 15, 1988, Michaels Art Metals, Inc., which was then a ·debtor in possession, entered into a stipulation which was approved by this court whereby the debtor was allowed to use CCC's cash collateral to fund ·operations of its ongoing business in exchange for CCC obtaining a super priority position in all pre-petition and post-petition assets of Michaels Art Metals, Inc. to the extent of $227,000.00.

Thereafter, CCC obtained relief from the automatic stay and was permitted to foreclose on a portion of its collateral in the State of Kentucky. At the present time, Michaels Art Metals, Inc. is indebted to CCC in the principal amount of $2,142,114.00, together with accrued interest of over $426,000.00, together with costs and expenses for a total amount of $2,693,429.00.

14. Pursuant to the proposed stipulation dated August 3, 1989 between CCC and the trustee in bankruptcy, CCC agrees to reduce its secured claim from $2,693,429.00 to $1,600,000.00, with the balance of the claim being unsecured. CCC agrees to release its liens against a non-Michaels Group subsidiary and to consent to the expungement of its claim against another non-Michaels Group subsidiary. The stipulation is conditioned upon the trustee's obtaining an order for substantive consolidation, in which event CCC agrees not to pursue its remedies against any of the non-Michaels Group subsidiaries. The trustee also stipulated to turn over to CCC the balance of the funds in the substantively consolidated estates, less $280,000.00 which is earmarked for settlement with Citytrust, another holder of a secured claim against the Michaels Group. The stipulation also provides that the sum of $150,000.00 is to be left unencumbered for the estates administered by the trustee in bankruptcy.

15. The trustee urges that the stipulation is in the best interests of the estate because it reduces CCC's secured claim and avoids litigation as to the amount. The trustee reasons that if substantive consolidation of the Michaels Group of cases is not achieved and the stipulation with CCC is not approved, CCC would be entitled to the entire estate of the Michaels Group. On the other hand, if substantive consolidation is ordered and the stipulation is approved, the trustee would obtain for the Michaels Group the sum of $150,000.00 in cash, together with 25% of all receivables collected by CCC on an ongoing basis. The remaining 75% of the proceeds from the receivables would be retained by CCC.

16. The objector, Willard Gay, argues that the Internal Revenue Service asserts a secured claim against Heritage, for which Acquisition and he are liable and that as a result of the stipulation CCC will have a secured claim of $1,300,000.00, which exceeds the value of these estates. This argument ignores the fact that the estates will receive $150,000.00 in cash, an amount which would not be available if CCC pursues its secured claim in full.

17. The main argument raised by Willard Gay is that he is a creditor of Acquisition and that CCC is a creditor of Michaels Art Metals, Inc., another subsidiary corporation in the Michaels Group. Therefore, if the Michaels Group is substantively consolidated and the proposed stipulation between the trustee and CCC is approved, the entire pool of assets in the Michaels Group will be available to CCC, whereas if substantive consolidation is not ordered, CCC must seek redress only against Michaels Art Metals, Inc. and may not look to the assets of Acquisition. This point ignores the fact that Acquisition did business as Michaels Art Metals; that I.R.C.C., Inc. guaranteed the obligation to CCC; that funds advanced by CCC were used to fund the operations of Acquisition; that all invoices issued by the Michaels Group, including invoices generated by Acquisition's sales, were assigned to CCC and that the intercompany formalities were not observed so that Acquisition and the other entities in the Michaels Group were treated by management, including Willard Gay, who was the Chief Operating Officer of the parent corporation and all of the subsidiaries, including the Michaels Group, as one economic unit. Neither the trustee in bankruptcy nor Willard Gay, could prevent CCC from claiming all of the assets in the estates of the Michaels Group because the management of the Michaels Group, including Willard Gay, had already pooled the collective assets and liabilities of these subsidiaries before these cases were converted to Chapter 7. The business omelet was scrambled before the trustee came on the scene. He inherited this condition and cannot now unscramble the omelet.

18. In light of the fact that the Michaels Group should be substantively consolidated because it operated as one economic unit, known to creditors and customers alike as Michaels Art Metals, it follows that the stipulation proposed by the trustee and CCC should be approved. The trustee correctly believes that the stipulation is in the best interests of the creditors and these estates. CCC would convincingly assert that the subsidiaries in the Michaels Group were alter egos and one business pocket, so that all of the assets of the Michaels Group were covered by its secured claim. Clearly, all of the accounts receivable generated by the Michaels Group were assigned to CCC to collateralize its advances. As a result of the proposed stipulation, the trustee in bankruptcy will have $150,000.00 in cash available for the estates in the Michaels Group and will be entitled to receive from CCC 25% of the proceeds collected from the assigned accounts receivable.

19. Willard Gay, the only creditor of these estates objecting to substantive consolidation and the proposed stipulation between the trustee and CCC has not sustained his objections. He has not overcome the trustee's proof that the separate assets of the subsidiaries in the Michaels Group are hopelessly obscured and that the inventories, liabilities and receivables of each of the entities in the Michaels Group cannot be traced. The trustee in bankruptcy, who stands in the shoes of all creditors of these estates, has established that a refusal to consolidate substantively the entities in the Michaels Group will threaten the realization of assets for all the creditors who dealt with the Michaels Group as a single economic unit. An attempt to unscramble the entities would be fruitless, whereas the trustee has established that all creditors of the Michaels Group would be better off with substantive consolidation and this court's approval of his stipulation with CCC.

## DISCUSSION

This motion reflects the other side of the substantive consolidation coin. Generally the operating management of a group of related corporate debtors which filed separate bankruptcy cases seeks an order for substantive consolidation in an ongoing corporate reorganization in order to pool all their assets and liabilities for the purpose of proposing a plan of reorganization pursuant to which all of the separate corporate creditors will share proportionately in the pooled assets. Unless the assets and financial structures of the various corporations are so hopelessly entangled that they cannot be separated and creditors have dealt with the various related corporations as one financial entity, substantive consolidation will not be allowed for equitable reasons because the creditors of the corporation with greater assets will have their claims diluted and will have to share in the pool of assets with the creditors of the corporation possessing no assets or lessor assets. Therefore, the Second Circuit Court of Appeals has ruled that substantive consolidation, which is a doctrine not expressly provided for under the Bankruptcy Code,

> should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt with that debtor without knowledge of its interrelationship with others.

*Chemical Bank New York Trust Company v. Kheel,* 369 F.2d 845 at 847 (2d Cir. 1966). Substantive consolidation affects substantive rights and is not simply a tool for procedural convenience. *Union Savings Bank v. Augie/Restivo Baking Company, Ltd. et al. (In re Augie/Restivo Baking Company, Ltd.),* 860 F.2d 515 (2d Cir.1988); *James Talcott, Inc. v. Wharton (In re Continental Vending Machine Corp.),* 517 F.2d 997 (2d Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976); *Flora Mir Candy Corporation v. R.S. Dickson & Co. (In re Flora Mir Candy Corporation),* 432 F.2d 1060.

The Second Circuit Court of Appeals reviewed some of the critical factors considered by the courts in deciding the question of substantive consolidation and reduced the variants to two key factors as follows:

(i) whether creditors dealt with the entities as a single economic unit and "did not rely on their separate identity in extending credit," 5 *Collier on Bankruptcy* § 1100.06, at 1100–33; *see also Flora Mir,* 432 F.2d at 1063–65; *Kheel,* 369 F.2d at 847; *Soviero v. Franklin Nat. Bank,* 328 F.2d 446 (2d Cir.1964) (consolidation proper where creditors dealt with debtor and its affiliates as if they were one corporation and failed to demonstrate reliance on credit of any separate judicial entity); *In re D.H. Overmyer,* 2 B.C.D. 412 (Bankr.S.D.N.Y.1976); or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors, *Kheel,* 369 F.2d at 847; [*In re*] *Commercial Envelope* [*Mfg. Co.,* ], 3 B.C.D. [647] at 649–52 [ (Bankr.S.D. N.Y.1977) ].

*Union Bank v. Augie/Restivo Baking Company, Ltd. et al.,* 860 F.2d at 518.

In *Soviero v. Franklin National Bank of Long Island,* 328 F.2d 446 (2d Cir.1964), which did not involve a corporate reorganization or separately filed bankruptcy petitions of various corporate debtors, a trustee in bankruptcy of one of the bankrupt corporations which was affiliated with thirteen nonbankrupt corporations bearing the same name was permitted to sell the assets of the nonbankrupt affiliates over the objections of a lien creditor of the nonbankrupt affiliates. The court permitted the trustee in bankruptcy to pierce the veils of the nonbankrupt affiliates so as to include their assets as part of the bankrupt's estate because the affiliates were instrumentalities of the bankrupt with no separate existence of their own.

·In the instant case, all the separate corporate entities have invoked the jurisdiction of this court under the Bankruptcy Code. There are no nondebtor entities; and the same trustee administers the assets of all the debtors. There is no question that the assets of all of the debtor corporate entities may be administered under the aegis of the bankruptcy court. The critical issue is whether the same trustee in bankruptcy of each entity may pool their assets for the benefit of all their creditors collectively, rather than liquidating each debtor separately upon the basis of the separate assets and liabilities of each corporate debtor. The trustee's proposed stipulation with CCC may be considered by the court only if substantive consolidation is permitted.

Because the debtor corporations are no longer seeking Chapter 11 relief, none of the separate corporate entities will survive liquidation under Chapter 7 of the Bankruptcy Code and will not reap reorganizational benefits that were previously available before they were converted from Chapter 11. The management, which originally filed the separate Chapter 11 petitions, including the objecting creditor, Willard Gay, who was the former Chief Operating Officer of all of the corporations, has been succeeded by a Chapter 7 trustee in bankruptcy appointed by the United States trustee. The Chapter 7 trustee in bankruptcy stands in the shoes of all of the creditors in each separate case. Unlike the parochial interest of a debtor corporation in a Chapter 11 reorganization case which hopes to benefit from a proposed substantive consolidation at the expense of those creditors of the less solvent debtor, the same trustee in bankruptcy of the three debtors in the Michaels Group in the instant cases seeks substantive consolidation on behalf of all the creditors he represents in the separate group of subsidiary corporations. The trustee's motion for substantive consolidation of the three entities in the Michaels Group is made in furtherance of his duty to ensure the equitable treatment of all creditors. Absent a successful substantive consolidation of the Michaels Group and a rejection of the trustee's proposed stipulation with CCC, the secured finance company, there will probably be no unsecured assets available to any of the debtors in these cases.

The only opposition to the trustee's motion is raised by the former Chief Operating Officer of all of the Chapter 7 debtors in this case. As the holder of an unsecured claim against Acquisition, one of the subsidiary corporations in the Michaels Group, he does not want his claim diluted by having to share with creditors of the less solvent subsidiaries in the Michaels Group.

However, as the Chief Operating Officer of all the debtor corporations and as the officer who signed all of the Chapter 11 petitions, he should be keenly aware of the fact that management left the books and records of all the debtors in disarray and that the trustee in bankruptcy cannot begin to unscramble the chaotic financial picture. The evidence reveals that the Michaels Group was treated by its management, customers and creditors as one economic unit with no attention paid to the separate corporate identities or assets. All of the invoices from the entities in the Michaels Group bear the name Michaels Art Metals. The checks from customers were made payable jointly to Michaels Art Metals and CCC, the finance company, which advanced funds on the faith of these invoices from all the entities in the Michaels Group, which funds were used to sustain the operations of the entities in the Michaels Group. In light of these facts, this management creditor will not be permitted to float on top of the pool of assets, thereby swimming free of those creditors whose only relief from the heat of dried up assets is a chance to dip in the consolidated pool.

Having concluded that substantive consolidation of the Michaels Group cases is appropriate, it follows that the trustee in bankruptcy is entitled to obtain approval of his stipulation with CCC, because he has established that such stipulation is in the best interests of the substantively consolidated estates and their creditors.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The trustee in bankruptcy has established the existence of facts justifying the granting of an order for substantive consolidation of the subsidiary corporations in the Michaels Group.

3. The trustee in bankruptcy has also sustained his burden of demonstrating that his proposed stipulation with CCC is in the best interests of the estates and creditors

in the Michaels Group and should be approved.

4. The objecting creditor and former Chief Operating Officer of these debtor corporations has failed to sustain his objection to the trustee's motions for substantive consolidation of the entities in the Michaels Group and for approval of the trustee's stipulation with CCC, dated August 3, 1989.

SETTLE ORDER ON NOTICE.